UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DANIEL COURNEY | HON. EDWARD S. KIEL<br><br>Mag. No. 21-15452 (ESK) |

GOVERNMENT'S TRIAL MEMORANDUM

PHILIP R. SELLINGER
UNITED STATES ATTORNEY
*970 Broad Street, Suite 700*
*Newark, NJ 07102*

On the Brief:
R. Joseph Gribko and
Susan Millenky
Assistant United States Attorneys

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................ii

PRELIMINARY STATEMENT ............................................................. 1

I.     BACKGROUND ...................................................................... 2

II.    APPLICABLE STATUTE ......................................................... 5

III.   ELEMENTS OF THE OFFENSE .............................................. 6

IV.    EVIDENTIARY ISSUES.......................................................... 8

    A.   Because the FACE Act Is a Constitutionally Valid and Lawful Statute, Courney Should Not Be Permitted to Argue Otherwise to the Jury............... 8

    B.   Courney's Alleged Actions Are Not Protected by the First Amendment and Courney Should Not Be Permitted to Argue Otherwise to the Jury ....... 12

    C.   Courney Should Not Be Permitted To Argue That His Actions Were Justified By The Defense of Others or Necessity Because These Defenses Are Inapplicable under the FACE Act .............................................................. 15

    D.   Courney's Allegations of Threats Made to Him by Clinic Volunteers Should be Barred...................................................................................... 17

    E.   The Court Should Limit the Defendant's Introduction of Character or Reputation Evidence ....................................................................... 18

CONCLUSION ......................................................................... 20

## TABLE OF AUTHORITIES

**Cases**  **Page(s)**

*Allentown Women's Center v. Sulpizio,*
 403 F. Supp. 3d 461 (E.D. Pa. 2019) ....................................................... 6, 7

*American Life League, Inc. v. Reno,*
 47 F. 3d 642 (4th Cir. 1995)........................................................... 8, 12, 14

*City of Sterling Heights v. Zastrow,*
 No. 2021-0365-AV (Cir. Ct. Mich. Mar. 21, 2022) ....................................... 15

*Government of the Virgin Islands v. Grant,*
 775 F.2d 508 (3d Cir.1985) ................................................................ 18

*Greenhut v. Hand,*
 996 F. Supp. 372 (D.N.J. 1998).......................................................... 2, 19

*New York ex rel. Spitzer v. Cain,*
 418 F. Supp. 2d 457 (S.D.N.Y. 2006)........................................................ 6

*New York v. Griepp,*
 991 F.3d 81, 103 (2d Cir. 2021), *aff'd in part, vacated in part,*
 11 F.4th 174 (2021) ...................................................................... 19

*Northeast Women's Center v. McMonagle,*
 868 F.2d 1342 (3d Cir. 1989) ............................................................. 15

*Norton v. Ashcroft,*
 298 F.3d 547 (6th Cir. 2002)............................................................. 15

*Planned Parenthood Ass'n of Southeastern Pennsylvania, Inc. v. Walton,*
 949 F. Supp. 290 (E.D. Pa. 1996)........................................................... 8

*Roberts v. United States Jaycees,*
 468 U.S. 609  (1984)...................................................................... 13

*Roe v. Operation Rescue,*
 919 F.2d 857 (3d Cir. 1990) .............................................................. 15

*Terry v. Reno,*
 101 F.3d 1412 (D.C. Cir. 1996) ............................................................ 8

*United States v. Balint,*
 201 F.3d 928 (7th Cir. 2000)............................................................... 9

*United States v. Dillard,*
    795 F.3d 1191 (10th Cir. 2015) .................................................................. 8

*United States v. Dinwiddie,*
    76 F.3d 913 (8th Cir. 1996) ................................................................. 2, 13

*United States v. Dunkin,*
    438 F.3d 778 (7th Cir. 2006) ...................................................................... 9

*United States v. Epstein,*
    91 F. Supp. 573 (3d Cir. 2015) ................................................................ 14

*United States v. Fattah,*
    No. 14-409, 2015 WL 10786007 (E.D. Pa. Jan. 12, 2015) ......................... 11

*United States v. Funches,*
    135 F.3d 1405 (11th Cir. 1998) ............................................................. 9, 10

*United States v. Gorham,*
    523 F.2d 1088 (D.C. Cir. 1975) ............................................................... 10

*United States v. Gregg,*
    226 F.3d 253 (3d Cir. 2000) .................................................... 8, 12, 13, 14

*United States v. Hill,*
    893 F. Supp. 1034 (N.D. Fla. 1994) ........................................................... 2

*United States v. Kopp,*
    562 F.3d 141 (2d Cir. 2009) ...................................................................... 15

*United States v. Leadbeater,*
    No. Crim. .A. 13-121-1, 2015 WL 567025 (D.N.J. Feb. 10, 2015) ............... 11

*United States v. Lucero,*
    895 F. Supp. 1421 (D. Kan. 1995) ........................................................... 10

*United States v. Lynch,*
    903 F.3d 1061 (9th Cir. 2018) .................................................................... 9

*United States v. O'Brien,*
    391 U.S. 367 (1968) ................................................................................. 11

*United States v. Pantone,*
    609 F.2d 675 (3d Cir. 1979) ...................................................................... 18

*United States v. Penn,*
    969 F.3d 450 (5th Cir. 2020) *cert. denied*, 141 S. Ct. 2526 (2021) ............... 9

*United States v. Peterson,*
    945 F.3d 144, (4th Cir. 2019)........................................................ 9

*United States v. Smith,*
    725 F.3d 340 (3d Cir. 2013) ....................................................... 18

*United States v. Soderna,*
    82 F.3d 1370 (7th Cir. 1996) ...................................................... 13

*United States v. Trujillo,*
    714 F.2d 102 (11th Cir.1983) ............................................... 10, 11

*United States v. Walsh,*
    654 F. App'x 689 (6th Cir. 2016) ................................................ 9

*United States v. Weslin,*
    156 F.3d 292 (2d Cir. 1998) ....................................................... 13

*United States v. Weslin,*
    964 F. Supp. 83 (W.D.N.Y. 1997) ............................................. 14

*United States v. Wright,*
    363 F.3d 237 (3d Cir. 2004) ....................................................... 18

*Virgin Islands v. Belardo,*
    385 F. App'x 149 (3d Cir. 2010) ............................................... 17

*Wisconsin v. Mitchell,*
    508 U.S. 476 (1993) .................................................................... 13

**Statutes**

18 U.S.C. § 248............................................................................... 2

18 U.S.C. § 248(a)(1) ............................................................... 2, 5, 6

18 U.S.C. § 248(e)(1) .................................................................. 2, 5

18 U.S.C. § 248(e)(2) .................................................................. 5, 6

18 U.S.C. § 248(e)(3) .................................................................. 5, 6

18 U.S.C. § 248(e)(4) ..................................................................... 5

18 U.S.C. § 248(e)(5) .................................................................. 2, 5

## *Rules*

Fed. R. Evid. 401 ................................................................................ 11, 16

Fed. R. Evid. 402 .................................................................................... 11

Fed. R. Evid. 403 ................................................................................ 11, 16

Fed. R. Evid. 404 .................................................................................... 19

Fed. R. Evid. 404(a)(1) ........................................................................... 19

Fed. R. Evid. 404(a)(2) ...................................................................... 17, 18

Fed. R. Evid. 404(b) ................................................................................ 18

Fed. R. Evid. 405 .................................................................................... 19

Fed. R. Evid. 405(b) ................................................................................ 18

## **<u>PRELIMINARY STATEMENT</u>**

The Government respectfully submits this memorandum to set forth its legal analysis related to evidentiary matters that may arise during the trial in *United States v. Daniel Courney*, which is scheduled to begin before this Court on September 22, 2022.  The Government requests leave to supplement this memorandum if other issues arise.

## I.  **BACKGROUND**

Defendant Daniel Courney ("Defendant" or "Courney") is charged by a two-count Information with two violations of Section 248(a)(1) of the Freedom of Access to Clinic Entrances Act (the "FACE Act") for using force and physical obstruction to intentionally intimidate and interfere with a volunteer patient escort ("Victim 1") at Metropolitan Medical Associates ("the Clinic"), a health care facility (as defined in 18 U.S.C. § 248(e)(1)) in Bergen County, New Jersey. The Clinic and Victim 1 provide reproductive health services (as defined in defined in 18 U.S.C. § 248(e)(5)).

### **The Clinic and Victim 1**

The evidence at trial will show that the Clinic has a street-level front entrance, directly adjacent to a public sidewalk.  Patients and their companions entering the Clinic often park on the street or in nearby parking lots and walk to the Clinic on public sidewalks.  The Clinic employs volunteers called "Escorts" who, among other things, advise patients and their companions about parking and who walk with the patients and their companions to and from the Clinic.  These Escorts, such as Victim 1, are considered health care providers within the meaning of 18 U.S.C. § 248; *Greenhut v. Hand*, 996 F. Supp. 372, 375 (D.N.J. 1998); *United States v. Hill*, 893 F. Supp. 1034, 1039 (N.D. Fla. 1994); *United States v. Dinwiddie*, 76 F.3d 913, 926-27 (8th Cir. 1996).

## Courney's History with the Clinic

The evidence at trial will show that the Clinic is often a target of anti-abortion protestors, and that Courney was a regular and aggressive protestor. Even before the incidents alleged in the Information, Courney had been protesting outside the Clinic nearly every Saturday since the Clinic's volunteer Escort program resumed after the COVID-19 pandemic in February 2021. Courney regularly followed patients walking into the Clinic, blocked the door as the patients have attempted to enter, and interfered with the Escorts as they assisted patients. Courney has had numerous interactions with the Escorts, the program coordinators, patients, and even a doctor at the Clinic. Many of those individuals have filed multiple police reports related to Courney's conduct.

## Incidents Set Forth In the Information

The Information alleges two violations of the FACE Act. First, it alleges that on or about October 16, 2021, Courney used physical force to intimidate or interfere with Victim 1 while he was providing reproductive health services to a patient who sought such services. As this patient drove near the curb in front of the Clinic, she pulled her car over and asked Victim 1 where to park. As Victim 1 gave directions to the patient and her companion, Courney approached the vehicle and told the patient to "save [her] child" and not enter the clinic. Courney then told the patient and her companion to not listen to Victim 1's directions and used force to interfere with and intimidate Victim 1.

3

Specifically, Courney – using his hip – physically pushed Victim 1 away from the window of the patient's car.

Second, the information alleges that on October 30, 2021, while Victim 1 was escorting another patient seeking reproductive health services to the Clinic entrance, Courney moved his body in between Victim 1 and the patient to block the patient from entering the Clinic's front door.  Courney then shoved Victim 1 toward the street and away from the patient to physically prevent Victim 1 from escorting the patient into the Clinic, while taunting Victim 1 and calling him a "coward."

## II.   <u>APPLICABLE STATUTE</u>

The FACE Act provides criminal penalties for a person who

> by force or threat of force or by physical obstruction, intentionally injuries, intimidates, or interferes with or attempts to injure, intimidate or interfere with any person because that person is or has been, or in order to intimidate such person or any other person or any class of persons from, obtaining or providing reproductive health services. . . .

18 U.S.C § 248(a)(1).  The Act provides the following relevant definitions:

1) The term "facility" includes a hospital, clinic, physician's office, or other facility that provides reproductive health services, and includes the building or structure in which the facility is located.

2) The term "interfere with" means to restrict a person's freedom of movement.

3) The term "intimidate" means to place a person in a reasonable apprehension of bodily harm to him or herself or to another.

4) The term "physical obstruction" means rendering impassable ingress to or egress from a facility that provides reproductive health services.

5) The term "reproductive health services" means reproductive health services provided in a hospital, clinic, physician's office, or other facility, and includes medical, surgical, counseling or referral services relating to the human reproductive system, including services relating to pregnancy or the termination of a pregnancy.

*Id.* § 248(e)(1) to (e)(5).

### III.  <u>ELEMENTS OF THE OFFENSE</u>

To establish a violation of § 248(a)(1), the following elements must be met:

**First:** The defendant used force, threat of force, or physical obstruction;

**Second:** The defendant intentionally injured, intimidated or interfered with, or attempted to injure, intimidate, or interfere with, any person;

**Third:** The defendant acted because that person was or had been providing reproductive health services, or in order to intimidate such person or any other person or any class of persons from, obtaining or providing reproductive health services.

The Government has charged Courney with violating the FACE Act by use of force or physical obstruction to intimidate and interfere with—or to attempt to intimidate and interfere with—a provider of reproductive health services because he was providing those services.  The FACE Act defines "interfere with" as "to restrict a person's freedom of movement."  18 U.S.C. § 248(e)(2).  The statute also defines "intimidate" as "to place a person in reasonable apprehension of bodily harm to him- or herself or to another."  *Id.* § 248(e)(3).

The statute does not define "force."  But courts have held that force within the meaning of the FACE Act is "power, violence, or pressure directed against a person or thing" and is "not limited to violent or assaultive force." *New York ex rel. Spitzer v. Cain*, 418 F. Supp. 2d 457, 473 (S.D.N.Y. 2006) (internal quotation marks and citation omitted); *Allentown Women's Center v. Sulpizio*, 403 F. Supp. 3d 461, 467-48 (E.D. Pa. 2019) (employing *Cain*'s

6

definition of force but holding that the use of force alleged differed from the facts of *Cain*). Notably, "force" includes "*de mimimis* contact."  *Id.*  For instance, in *Cain*, the court found that when the defendant approached a volunteer escort, pressed his body into the escort, and pushed the escort was, among the conduct alleged, "the clearest example of a use of force in violation of FACE." *Id.* at 474.

IV.    **EVIDENTIARY ISSUES**

The following are evidentiary issues that may arise during the trial.

> **A. Because the FACE Act Is a Constitutionally Valid and Lawful Statute, Courney Should Not Be Permitted to Argue Otherwise to the Jury**

Courney has suggested that he may challenge the constitutionality of the FACE Act on First Amendment or due process grounds.  The Third Circuit and courts throughout the country have already considered and rejected these arguments.  *See United States v. Gregg*, 226 F.3d 253 (3d Cir. 2000) (finding the FACE Act a constitutional, viewpoint neutral statute governing conduct, not speech and describing an argument that FACE is unconstitutionally vague and overbroad as "without merit"); *United States v. Dillard*, 795 F.3d 1191 (10th Cir. 2015) (holding that true threats of unconditional and imminent violence in violation of the FACE Act do not substantially burden defendant's rights under RFRA); *Terry v. Reno*, 101 F.3d 1412 (D.C. Cir. 1996) ("Consistent with the First Amendment, the Government may . . . punish physical obstruction that makes passage to or from a reproductive health facility impossible or unreasonably hazardous"); *Planned Parenthood Ass'n of Southeastern Pennsylvania, Inc. v. Walton*, 949 F. Supp. 290 (E.D. Pa. 1996) (concluding an incidental burden on religious mission to stop abortions was justified by government's compelling interest to regulate physical obstruction of clinic entrances); *American Life League, Inc. v. Reno*, 47 F. 3d 642 (4th Cir. 1995) (holding the FACE Act neither vague nor broad in relation to its legitimate aim to outlaw violence and barriers to accessing health services);

8

*United States v. Balint*, 201 F.3d 928 (7th Cir. 2000) (applying plain language of the FACE Act to a defendant's forceful conduct is definitive, plausible, and consistent, and thus does not violate due process).

Because the FACE Act has been consistently upheld as constitutionally valid and lawful, the Court should prevent Courney from arguing to the jury that the FACE Act is unconstitutional or that the jury ought not enforce it on philosophical grounds. Indeed, such arguments seek nothing more than jury nullification and are, thus, irrelevant and inadmissible. *See, e.g.*, *United States v. Penn*, 969 F.3d 450, 458 (5th Cir. 2020) (noting that evidence sought to be admitted solely for nullification is irrelevant and inadmissible), *cert. denied*, 141 S. Ct. 2526 (2021); *United States v. Peterson*, 945 F.3d 144, 157 (4th Cir. 2019) (holding trial court properly precluded defense evidence of his lengthy state sentence given its "self-evident invitation to jury nullification"); *United States v. Lynch*, 903 F.3d 1061, 1080 (9th Cir. 2018) (noting that the jury "has no sentencing function" and "should be admonished to reach its verdict without regard to what sentence might be imposed"); *United States v. Walsh*, 654 F. App'x 689, 696–97 (6th Cir. 2016) (affirming trial court's refusal to allow the defense to argue about the legitimacy of federal marijuana laws); *United States v. Dunkin*, 438 F.3d 778, 780 (7th Cir. 2006) (holding that a defense unsupported by credible evidence should not be submitted to a jury since it invites improper jury nullification); *United States v. Funches*, 135 F.3d 1405, 1408 (11th Cir. 1998) (affirming a trial court's exclusion of evidence that a defendant relied to his detriment on erroneous advice from a state official that

9

he could lawfully possess a gun; the defense was irrelevant to the federal charge and its only relevance would have been to "inspire a jury to exercise its power of nullification"); *United States v. Gorham*, 523 F.2d 1088, 1097–98 (D.C. Cir. 1975) (affirming a trial court order precluding defense evidence that might encourage a "conscience verdict" of acquittal).

"[T]he jury enjoys no right to nullify criminal laws. . . ." *Funches*, 135 F.3d at 1408; *see also United States v. Trujillo*, 714 F.2d 102, 106 (11th Cir.1983) ( "Appellant's jury nullification argument would have encouraged the jurors to ignore the court's instruction and apply the law at their caprice."); *Gorham*, 523 F.2d at 1097-98  (affirming trial court's refusal to admit evidence bearing no legal relation to the charges but which might encourage a "conscience verdict" of acquittal); *United States v. Lucero*, 895 F. Supp. 1421, 1426 (D. Kan. 1995) (cited in *Funches*, *supra*) ("[D]efendants are not entitled to present evidence which is irrelevant for any purpose other than to provoke finder of fact to disregard the law.").

The decision in *United States v. Lucero* is particularly instructive.  *Lucero* was also a FACE Act case in which defendants were charged with interfering with individuals' rights to obtain reproductive health services.  *Lucero*, 895 F. Supp. at 1426.  In their defense, the defendants sought to present, among other things, "philosophical" evidence regarding the implications of abortions. *Id.*  In refusing to admit such evidence, the court began its analysis by noting that jurors should not be encouraged "to violate their oath by refusing to apply the law as given in the court's instructions." *Id.* (citing *United States v. Trujillo*,

714 F.2d 102, 105-06 (11th Cir. 1983)). The court then determined that the defendants' proposed evidence was "irrelevant for any purpose other than to provoke the finder of fact to disregard the law" and that it was "irrelevant to any material issue in the case." *Id.* Consequently, the court excluded the proposed evidence as irrelevant. *Id.* (citing Fed. R. Evid. 402). Moreover, the court also found that, "even if such evidence were relevant, its probative value would be substantially outweighed by the likelihood that its presentation would result in unfair prejudice and confusion of the issues." *Id.* (citing Fed. R. Evid. 403). Finally, and significantly, the court also explicitly rejected the defendants' request to present First Amendment "philosophical" evidence concerning abortions. *Id.* at 1425 ("Criminal conduct is not rendered protected speech in a given case merely because the actor intended to send a message, political or otherwise. . . . [D]efendant is charged because of his conduct, not because of his message." (citing *United States v. O'Brien*, 391 U.S. 367, 376 (1968)).

Rules 401 and 402 of the Federal Rules of Evidence also prohibit these jury nullification arguments. *Id.* Such jury nullification evidence does not have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." Fed. R. Evid. 401. Irrelevant evidence is inadmissible. Fed. R. Evid. 402; *see also United States v. Fattah*, No. 14-409, 2015 WL 10786007, at *1 (E.D. Pa. Jan. 12, 2015) ("[A]ny evidence geared toward jury nullification would clearly be irrelevant."); *United States v. Leadbeater*, No. Crim. .A. 13-121-1, 2015 WL

11

567025, at *9 (D.N.J. Feb. 10, 2015) (granting the government's motion to bar jury nullification and prohibiting the defense from arguing, eliciting testimony or "adducing irrelevant evidence" when "[d]efendants' theory . . . does not and could not negate liability in this case").

Accordingly, the Court should prohibit Courney from arguing to the jury that the FACE Act is invalid and should not be enforced. This Court should be prepared to prohibit Courney's attempts to make improper legal argument or to inject his political philosophy into the trial for the improper purpose of nullification.

### B. Courney's Alleged Actions Are Not Protected by the First Amendment and Courney Should Not Be Permitted to Argue Otherwise to the Jury

Relatedly, Courney has also suggested that he may assert that his actions are protected under the First Amendment. The FACE Act expressly prohibits violence, threats of violence, and physical obstruction—conduct that is not protected under the First Amendment. *Gregg*, 226 F.3d at 267-68. Additionally, because the First Amendment's religious exercise protections do not extend to violent acts, the FACE Act does not substantially burden Courney's ability to engage in behavior in accordance with his religious belief. *Am. Life League, Inc. v. Reno,* 47 F.3d 642, 654, 656 (4th Cir. 1995) (holding that the FACE Act does not violate RFRA). Courney is free to engage in his "preaching" and peacefully protest. The FACE Act charges against Courney arise from two incidents during which Courney used *physical force*, not protected speech.

## As a Matter of Law, Defendant's Alleged Use of Force is Not Protected Speech, and Courney Should not be Permitted to Argue Otherwise to the Jury

Courney has suggested that he may present evidence contending his activity constituted protected speech and assembly under the First Amendment.  Notwithstanding Courney's protected right to protest outside the Clinic's buffer zone, evidence should be limited as to only the Defendant's forceful conduct towards Clinic staff and patients, not his speech activity.  As the Third Circuit has held, FACE regulates "force," "threats of force," and "physical obstruction" all of which are "not protected by the First Amendment, whether or not such conduct communicates a message." *Gregg*, 226 F.3d at 267; *see also United States v. Dinwiddie*, 76 F. 3d 913, 925 (8th Cir. 1996) (determining threats of force, injury, and reasonable apprehension of bodily harm fall outside of First Amendment protection); *United States v. Soderna*, 82 F.3d 1370, 1375 (7th Cir. 1996) ("[P]hysical assault . . . is not expressive conduct protected by First Amendment.")(*quoting  Wisconsin v. Mitchell,* 508 U.S. 476, 484–85 (1993), *quoting Roberts v. United States Jaycees*, 468 U.S. 609, 628  (1984)).

Courney cannot escape liability for his use of force and physical obstruction to intentionally intimidate and interfere with Victim 1 as a clinic escort, regardless of his mission to prevent individuals from accessing reproductive services.  *See, e.g.*, *United States v. Weslin*, 156 F.3d 292, 298 (2d Cir. 1998) (holding defendant's physical obstruction of clinic entrance

constituted a FACE violation regardless of desire to "save the lives of unborn children").

### As a Matter of Law, the FACE Act Does Not Burden the Defendant's Exercise of Religion, and Courney Should not be Permitted to Argue Otherwise to the Jury

As previously noted, the FACE Act prohibits forceful threats and conduct without regard to an individual's religious expression.  The Third Circuit has held that FACE does not deny fundamental privileges or substantially burden an individual's religious exercise. *Gregg*, 226 F.3d at 267.  If Courney asserts that FACE interferes with his right to freely exercise his religion, the Court should exclude any testimony relating to such proclamations because FACE punishes the Defendant's *conduct*, not the religious beliefs behind his crime. *Reno*, 47 F.3d at 654; *see also United States v. Epstein*, 91 F. Supp. 573, 585 (3d Cir. 2015) ("The First Amendment's protection of religious exercise does not typically extend to violent acts."); *United States v. Weslin*, 964 F. Supp. 83, 87 (W.D.N.Y. 1997) (holding anyone engaging in prohibited conduct outlined under FACE is subject to penalties "regardless of whether [they] are an atheist, a devout Christian, or a follower of any other religion").

Accordingly, Courney's alleged actions are not protected by the First Amendment, and Courney should not be permitted to argue otherwise to the jury.  Again, this Court should be prepared to prohibit Courney's attempts to make improper legal argument or to inject his political philosophy into the trial for the improper purpose of nullification.

### C. Courney Should Not Be Permitted To Argue That His Actions Were Justified By The Defense of Others or Necessity Because These Defenses Are Inapplicable under the FACE Act

Courney may argue that his conduct amounted to "the defense of others," specially the "unborn children" whose mothers were attempting to enter the Clinic.  The Court should not permit this purported defense.  Courts have declined to extend these defenses to individuals facing FACE Act charges who claim protection of others, finding such assertions unfounded in evidence and legally insufficient.  *See United States v. Kopp*, 562 F.3d 141, 145 (2d Cir. 2009); *see also Norton v. Ashcroft*, F.3d 547, 555 (6th Cir. 2002) (holding FACE violators had no third party standing for "prospective patients" of unborn children while blocking clinic entrance); *City of Sterling Heights v. Zastrow*, No. 2021-0365-AV (Cir. Ct. Mich. Mar. 21, 2022) (finding no threat warranted imminent use of force to prevent lawfully performed reproductive health services) (opinion and order attached for the Court's convenience).

Similarly, the Third Circuit has rejected reproductive health protestors' reliance on the defense of necessity, finding mere good faith an insufficient motive to nullify unlawful interference with persons seeking reproductive health services.  *See Northeast Women's Center v. McMonagle*, 868 F.2d 1342, 1350-52 (3d Cir. 1989); *Roe v. Operation Rescue*, 919 F.2d 857 (3d Cir. 1990).  Accordingly, the Court should bar these defenses.

Relatedly, Courney should not be permitted to provide evidence regarding his claims to have "saved lives of unborn children" to justify his use of unlawful force towards Victim 1.  The sensitive, personal, medical decisions of patients

made inside the Clinic are not relevant to Courney's use of force and physical obstruction outside the Clinic.  Regardless of whether patients may or may not have proceeded with reproductive services does not impact whether Courney violated the FACE Act.  Moreover, allowing evidence of patients' records or decisions regarding their reproductive health not only has no probative value related to Courney's alleged FACE violations, but would also result in unfair prejudice by significantly impacting viewpoints of jury members who may have strong opinions about a patient's reproductive choices.  *See* Fed. R. Evid. 401, 403.  Therefore, any evidence regarding patients' health matters make no fact required to prove the charges against Courney more or less probable and the prejudicial effects of this evidence would substantially outweigh any alleged probative value.

Accordingly, Courney should not be permitted to assert defenses such as necessity or the defense of others, and he should not be permitted to argue otherwise to the jury.  Again, this Court should be prepared to prohibit Courney's attempts to make improper legal argument or to inject his political philosophy into the trial for the improper purpose of nullification.

### D. Courney's Allegations of Threats Made to Him by Clinic Volunteers Should be Barred

Courney has claimed to have evidence that Clinic volunteers other than Victim 1 have threatened him on occasion, and he has suggested that this purported evidence is somehow relevant to his two alleged assaults of Victim 1. Courney has not provided the Government with any evidence of these alleged threats (indeed he has not provided the Government with any discovery whatsoever), and he should not be permitted to air these allegations at trial. Even if Courney has evidence of these alleged interactions with volunteers other than Victim 1, this evidence would not be admissible in connection to Courney's current FACE Act charges.

Indeed, even if there were evidence of such conduct by Victim 1, that would not provide a defense to the allegations, and thus should be excluded. Under Rule 404(a)(2), a defendant in a criminal case may offer reputation or opinion evidence of an alleged victim's "pertinent trait of character."  However, Courney's use force on the two dates described in the Information cannot be justified by previous threats or use of force by Clinic volunteers because after any such alleged threats or assaults ended, Courney's use of force would no longer be legally justified.  *See Virgin Islands v. Belardo,* 385 F. App'x 149, 155-56 (3d Cir. 2010) (precluding evidence rebutting victim's violent character until defendant actually asserts self-defense; "other acts" evidence of victim's violent

character would then be relevant).[1]  Also, should Courney be permitted to

introduce such evidence to show that Victim 1 was a "first aggressor," the

government would then be permitted to offer reputation or opinion evidence of

the "peacefulness" of the victim.  Rule 404(a)(2).

### E. The Court Should Limit the Defendant's Introduction of Character or Reputation Evidence

Under Rule 404(a)(1), a defendant in a criminal case may offer evidence

of a "pertinent trait of character." *United States v. Wright*, 363 F.3d 237, 246-47

(3d Cir. 2004).  Accordingly, Courney may call reputation or opinion witnesses

to some pertinent trait.  However, evidence proffered to show absence of prior

misconduct by defendant is not admissible as character evidence, at least in

cases where defendant's character is not essential element of the charged

offense.  *Government of the Virgin Islands v. Grant*, 775 F.2d 508, 512 (3d

Cir.1985).  Similarly, Courney is not permitted to introduce evidence of specific

instances of his good conduct or rely on his religious affiliations or prior

---

[1]  Contrarily, evidence of Courney's prior interactions with volunteers, including Victim 1, and other Clinic employees, is admissible pursuant to Fed. R. Evid. 404(b) and 405(b) because proof of specific episodes of conduct is admissible to prove character where a character trait is an "essential element of a charge, claim or defense . . . ." *See, e.g., United States v. Pantone*, 609 F.2d 675, 680-81 (3d Cir. 1979) (specific prior instances of bribery were admissible against one co-defendant who made general denial of any corrupt conduct, but inadmissible against other defendants because they had not made such a general denial and their character was not an "essential element" of corruption charges).  Here, these previous interactions show that Courney acted because Victim 1 "was or had been providing reproductive health services," or in order to intimidate Victim 1 or any other person (such as the other volunteers and the Clinic's patients) from obtaining or providing reproductive health services. *See United States v. Smith*, 725 F.3d 340 (3d Cir. 2013).

military status to establish his good moral character.  Under Fed. R. Evid. 404 and 405, evidence of a person's character or a trait of character is generally not admissible to show that the person acted in conformity on a particular occasion, nor is opinion or reputation testimony regarding Courney's undisputed religious faith relevant.  *See New York v. Griepp*, 991 F.3d 81, 103 (2d Cir. 2021) ("[E]ven when a protestor's goal is simply to share their beliefs . . . the protestor may still be liable for a FACE violation if they intentionally engage in acts which naturally and probably will injure, intimidate, or interfere with someone seeking or providing reproductive health services." (citation omitted)), *aff'd in part, vacated in part*, 11 F.4th 174 (2021)[22]; *Greenhut*, 996 F. Supp. at 378 ("FACE requires only general intent because threats in the context of FACE are to be evaluated in terms of their impact on the recipient, not the specific intent of their maker.") (citations omitted).

Finally, should the Court allow for such evidence, the Government reserves the right to rebut Courney's reputation under Fed. R. Evid. 404(a)(1) including but not limited to evidence of Courney's bad character, circumstances related to his military discharge, and his prior harassment towards additional escorts, doctors, and patients at the Clinic.

---

[22]  On a petition from defendants, the Second Circuit agreed to vacate its prior opinion and rehear *Griepp*.  *See* 11 F.4th at 117.  Both Second Circuit opinions upheld the District Court's denial of a preliminary injunction; the second *Griepp* decision did not discuss or cast doubt on the point cited here.

## **CONCLUSION**

For the reasons articulated above, the Court should admit the evidence referenced in this memorandum and should permit the Government to prove and defend its case consistent with the law articulated in this memorandum.

Respectfully submitted,
PHILIP R. SELLINGER
United States Attorney

*s/ R. Joseph Gribko*
R. Joseph Gribko

*s/ Susan Millenky*
Susan Millenky
Assistant United States Attorneys

DATED:      July 27, 2022
                    Newark, New Jersey